**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Daniel Gomez, et al., | ) | No. CV-12-1506-PHX-FJM |
| Plaintiffs, | ) ) | **ORDER** |
| vs. | ) ) | |
| Gary Faulkner, et al., | ) ) | |
| Defendants. | ) ) ) | |

The court has before it plaintiffs' motion for summary judgment against defendant Greg Scrivner (doc. 57), Scrivner's response (doc. 60), and plaintiffs' reply (doc. 62).

**I**

The Florence Community Hospital ceased operations in June 2012, and approximately 120 employees lost their jobs. Plaintiffs are four former employees of the Hospital who allege that they were not paid for the last three weeks of work before the Hospital closed. They filed this action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219, for unpaid wages and liquidated damages, on behalf of themselves and other similarly situated employees,[1] against four officers of the Hospital and its parent company, Initiatives Healthcare, LLC. Defendants McEachern and Cherne were the CEO and CFO, respectively,

---

[1] Seventy-one former employees have filed consents to join this lawsuit. PSOF ¶ 2.

1    of the parent Initiatives Healthcare, while defendants Faulkner and Scrivner were CEO and
2    CFO, respectively, of the Florence Hospital.
3         Plaintiffs argue in the present motion that defendant Scrivner was an "employer"
4    within the meaning of the FLSA, and therefore he is personally liable for the Hospital's
5    FLSA violations.

**II**

7    The FLSA requires that "employers" pay covered employees a minimum hourly wage.
8    29 U.S.C. § 206(a). Any employer who violates the FLSA is liable to the employee "in the
9    amount of their unpaid minimum wages . . . , and in an additional equal amount as liquidated
10   damages." Id. § 216(b). "Employer" is broadly defined in the statute as "any person acting
11   directly or indirectly in the interest of an employer in relation to an employee." Id. § 203(d).
12   Courts have further defined "employer" as one who "exercise[s] economic and operational
13   control over the employment relationship." Lambert v. Ackerley, 180 F.3d 997, 1012 (9th
14   Cir. 1999). The FLSA's definition of "employer" "is not limited by the common law concept
15   of 'employer,' but 'is to be given an expansive interpretation in order to effectuate the
16   FLSA's broad remedial purposes.'" Id. (quoting Bonnette v. Calif. Health & Welfare
17   Agency, 704 F.2d 1465, 1469 (9th Cir. 1983)).

**III**

19   The undisputed facts in the instant case show that as CFO of the Hospital, Scrivner
20   oversaw the Hospital's day-to-day financial operations; reviewed and approved payroll
21   information; co-signed payroll checks; hired, fired and determined hours of work for
22   employees within his department; attended board of director meetings; and prepared financial
23   reports for the parent company. Scrivner knew that the Hospital was having financial
24   difficulty and that lay-offs and bankruptcy were under consideration. He also knew that the
25   Hospital relied on "funders," or third-parties who purchased the Hospital's accounts
26   receivables in exchange for up-front funds to meet the Hospital's payroll expenses.
27   On June 15, 2012, the hospital distributed payroll checks to employees for the
28   preceding two-week pay period. Scrivner knew that the Hospital did not have sufficient

- 2 -

1  funds in the bank on June 15th to cover the checks.  However, defendant McEachern, CEO
2  of parent company Initiatives Healthcare, advised Scrivner that the "funder" had agreed to
3  fund the June 15th payroll, and directed Scrivner to distribute the checks to employees.  On
4  Monday, June 18, 2012, Scrivner received an email from McEachern stating that the funder
5  had reneged on the agreement and the June 15th payroll checks would not be funded.  It was
6  at this point that McEachern decided to close the Hospital.

7  Contrary to plaintiffs' assertions, there is no evidence that Scrivner "ma[de] decisions
8  to continue operations despite financial adversity during the period of nonpayment."  Reply
9  at 5 (citing Donovan v. Agnew, 712 F.2d 1509, 1514 (1st Cir. 1983)).  Plaintiffs have
10 presented no evidence to show that Scrivner had any decision-making authority with respect
11 to whether the Hospital would continue its operations.  Scrivner had no ownership interest
12 in the Hospital.  He had no authority to set employee salaries or benefits.  Although Scrivner
13 had significant responsibilities as the Hospital's CFO, there is no evidence that he had
14 "operational *control* of significant aspects of the corporation's day to day functions."  Id.
15 (emphasis added).  In fact, there is no evidence submitted that he had much operational
16 control at all.

17 With respect to the payment of the June 15th payroll, Scrivner testified that he had no
18 concern about the Hospital being able to meet payroll "because we had a funder who was
19 always willing to help us out."  PSOF, Scrivner Depo., 16: 11-13.  Defendant McEachern,
20 CEO of the Hospital's parent company, assured Scrivner that the paychecks issued on Friday
21 June 15, 2012 would be funded by Monday June 18th.  Id. 18:1-6.  McEachern instructed
22 Scrivner to issue the paychecks.  Id.  Scrivner did not learn until after the payroll checks were
23 distributed that the "funder" had reneged on its promise to make the payment.  Id. 20:1-4.

24 Plaintiffs rely on cases where corporate officers personally made decisions to keep a
25 business open despite the company's inability to fulfill its FLSA obligations to its employees.
26 See Donovan, 712 F.2d 1509; Dole v. Simpson, 784 F. Supp. 538, 546 (S.D. Ind. 1991).  In
27 Donovan, the court held that an "employer" under the FLSA is a corporate officer "with a
28 significant ownership interest who had operational control of significant aspects of the

1  corporation's day to day functions, including compensation of employees, and who
2  personally made decisions to continue operations despite financial adversity during the
3  period of nonpayment." 712 F.2d at 1514.

4         Unlike the cases relied upon by plaintiffs, however, there is no evidence
5  demonstrating that Scrivner was a corporate officer with a substantial ownership interest in
6  the corporation, who had authority to decide, or even to influence, whether to continue
7  Hospital operations–and to employ workers–despite the Hospital's financial condition.
8  Moreover, because Scrivner had no ownership interest in the Hospital, it cannot be said that
9  he "economic control over the corporation." See U.S. Dep't of Labor v. Cole Enter., 62 F.3d
10 775, 778 (6th Cir. 1995).

11        Nor is there any evidence that Scrivner had knowledge that the Hospital would be
12 unable to satisfy its obligations under the FLSA. "At bottom, [the] economic reality analysis
13 focuse[s] on the role played by the corporate officers in causing the corporation to
14 undercompensate employees and to prefer the payment of other obligations and/or the
15 retention of profits." Baystate Alt. Staffing, Inc. v. Herman, 163 F.3d 668, 678 (1st Cir.
16 1998). There is no evidence that Scrivner acted in the role of decision-maker with respect
17 to the actions that led the Hospital to undercompensate its employees.

18        Although the definition of "employer" under the FLSA is to be construed broadly in
19 order to effectuate the FLSA's broad remedial purposes, it is not likely that Congress
20 intended that "any supervisory or managerial employee of a corporation could be held
21 personally liable for the unpaid wages of other employees." Id. at 677.

22        Summary judgment is only appropriate where there is no genuine issue of material
23 fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56.
24 When we view the facts in the light most favorable to Scrivner, the nonmoving party, we
25 cannot conclude as a matter of law that Scrivner was an "employer" for purposes of the
26 FLSA, making him personally liable for the Hospital's wage violations.

27                                                       **IV**
28        **IT IS ORDERED DENYING** plaintiffs' motion for summary judgment against

1 | defendant Greg Scrivner (doc. 57).

2 |     DATED this 19th day of August, 2013.

*Frederick J. Martone*
Frederick J. Martone
Senior United States District Judge

- 5 -